# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER BALLESTEROS,       )
                                )
            Plaintiff,          )     Case No.: 2:23-cv-00135-GMN-DJA
    vs.                         )
                                )            **ORDER**
GARRISON PROPERTY AND CASUALTY  )
INSURANCE COMPANY, *et al.*,    )
                                )
            Defendants.         )

Pending before the Court is Defendant Garrison Property and Casualty Insurance Company's ("Defendant's") Motion to Dismiss, (ECF No. 8). Plaintiff Christopher Ballesteros ("Plaintiff") filed a Response, (ECF No. 10), to which Defendant filed a Reply, (ECF No. 16).

For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

## I.    BACKGROUND

This case arises from injuries Plaintiff sustained in an accident with a third-party driver in April 2021. As a result of the collision, Plaintiff suffered damage to his vehicle and physical injury, including "sprains/strains of the cervical, thoracic, and lumbar spine, right shoulder sprain, headaches, and permanent whole person impairment to his cervical and thoracic spine and right shoulder." (Am. Compl. ¶ 14, Ex. B to Pet. Removal, ECF No. 1-2).

Following the collision, Plaintiff made a demand to the third-party driver's insurer for the policy limits to provide partial coverage for his injuries. (*Id.* ¶ 15, Ex. B to Pet. Removal). Because Plaintiff's medical expenses and future surgical recommendations exceeded the third-party driver's policy limits, Plaintiff also made a claim for benefits under his policy, Number 032284859R71019 (the "Policy"), to Defendant. (*Id.* ¶ 6, 16, Ex. B to Pet. Removal). On May

12, 2021, Defendant was contacted by Plaintiff's counsel, who requested a "claim evaluation as well as payments of any benefits owed under the Policy. (*Id*. ¶ 17, Ex. B to Pet. Removal). That same day, Defendant acknowledged receipt of the claim. (*Id*. ¶ 18, Ex. B to Pet. Removal).

On November 22, 2021, Plaintiff sent Defendant further documentation of his injuries and again requested payment of benefits owed under the Policy. (*Id*. ¶ 19, Ex. B to Pet. Removal).  Plaintiff alleges that rather than investigate Plaintiff's claims, "as it is obligated to do under the Policy and Nevada law," Defendant informed him that "it would not begin reviewing his claim until he provided written confirmation of the at-fault driver's policy limits and an affidavit of no additional insurance for the at-fault driver." (*Id*. ¶ 20, Ex. B to Pet. Removal).  Plaintiff contends that the Policy contains no condition which requires this information prior to Defendant instituting an investigation. (*Id*. ¶ 21, Ex. B to Pet. Removal). Instead, Plaintiff asserts that Defendant had an "independent obligation to investigate, evaluate, and resolve" Plaintiff's claims without regard to the conduct of the third-party driver's insurer. (*Id*. ¶ 22, Ex. B to Pet. Removal).

In January 2022, Defendant made an offer to settle Plaintiff's claim, which Plaintiff alleges was unreasonable because the offer "was based on an inadequate and incomplete investigation of his" claim" since Defendant solely relied on the opinion of its internal claim handlers rather than medical professionals. (*Id*. ¶¶ 23–25, Ex. B to Pet. Removal).  In response to this purportedly unreasonable settlement offer, Plaintiff hired Kevin Nozawa ("Doctor Nozawa"), a Board Certified Independent Medical Examiner and Certified Life Care Planner, to perform an independent medical examination in March 2022. (*Id*. ¶ 26, Ex. B to Pet. Removal).  Plaintiff provided Defendant with Doctor Nozawa's evaluation on April 7, 2022, and again requested that Defendant consider all the provided medical evidence and opinion in evaluating his claim. (*Id*. ¶ 29, Ex. B to Pet. Removal).  According to Plaintiff, however, on

April 18, 2022, Defendant wrote to Plaintiff's counsel reiterating its earlier settlement offer without addressing Doctor Nozawa's report. (*Id*. ¶ 30, Ex. B to Pet. Removal).

On June 15, 2022, Defendant wrote to Plaintiff's counsel stating it had received his "demand" and was "currently in the process of evaluating it." (*Id*. ¶ 31, Ex. B to Pet. Removal). Two days later, Defendant sent another letter conveying its unchanged settlement offer. (*Id*. ¶ 32, Ex. B to Pet. Removal).  Plaintiff alleges that to date: (1) Defendant has not provided any contractual or factual basis for its valuation of his claim; (2) not paid him any benefits under the Policy; (3) and not addressed, either to accept or refute Doctor Nozawa's findings. (*Id*. ¶¶ 33–35, Ex. B to Pet. Removal).

Plaintiff subsequently filed suit in the Eighth Judicial District Court of Nevada. (*See generally* Compl., Ex. A to Pet. Removal, ECF No. 1-1).  Plaintiff then filed an Amended Complaint, alleging claims for: (1) declaratory relief; (2) breach of contract; (3) tortious breach of the implied covenant of good faith and fair dealing; and (4) breach of statutory duties under NRS § 686A.310. (Am. Compl. ¶¶ 38–60, Ex. B to Pet. Removal).  Defendant then removed to this Court based on diversity jurisdiction, (*see generally* Pet. Removal, ECF No. 1), and filed the instant Motion to Dismiss, (ECF No. 8).  The Court discusses Defendant's Motion to Dismiss below.

## II.   <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain

1  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

2  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

3  claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

5  standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

6  "Generally, a district court may not consider any material beyond the pleadings in ruling

7  on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

8  1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the

9  complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a

10  complaint and whose authenticity no party questions, but which are not physically attached to

11  the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.*

12  *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take

13  judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282

14  (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion

15  to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

16  If the court grants a motion to dismiss for failure to state a claim, leave to amend should

17  be granted unless it is clear that the deficiencies of the complaint cannot be cured by

18  amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant

19  to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

20  the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

21  movant, repeated failure to cure deficiencies by amendments previously allowed undue

22  prejudice to the opposing party by virtue of allowance of the amendment, futility of the

23  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

24  ///

25  ///

1    III.    <u>**DISCUSSION**</u>

2          As stated, Plaintiff's Amended Complaint asserts the following claims: (1) declaratory

3    relief; (2) breach of contract; (3) tortious breach of the implied covenant of good faith and fair

4    dealing; and (4) breach of statutory duties under NRS § 686A.310. (Am. Compl. ¶¶ 38–60, Ex.

5    B to Pet. Removal).  By the instant Motion to Dismiss, however, Defendant only moves to

6    dismiss Plaintiff's causes of action for declaratory relief, tortious breach of the implied

7    covenant of good faith and fair dealing, and breach of statutory duties under NRS § 686A.310.

8    (Mot. Dismiss ("MTD") 1:24–2:5).  The Court discusses these claims below, beginning with

9    Plaintiff's declaratory relief claim.

10        **A. Declaratory Relief**

11         Plaintiff's declaratory relief claim seeks declarations that: "(1) [Defendant] failed to pay

12   Plaintiff benefits in accordance with the terms of [the Policy] and within Nevada law; (2)

13   [Defendant's] conduct violated Nevada law; and (3) [Defendant's] misrepresentations to

14   Plaintiff constituted a deceptive trade practice within Nevada law." (Resp. 12:3–6, ECF No. 10)

15   (citing Am. Compl. ¶¶ 39–41, Ex. B to Pet. Removal).  Defendant maintains that Plaintiff's

16   claim for declaratory relief is redundant and unnecessary because it essentially asks the Court

17   to determine the parties' rights under the Policy as it relates Plaintiff's remaining causes of

18   action. (MTD 7:7–8:13).  The Court agrees.

19         The "declaratory relief statute should not be used for the purpose of anticipating and

20   determining an issue which can be determined in the main action, but is instead most

21   appropriate when it would be beneficial to make any early determination of coverage under the

22   policy." *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1127 (D. Nev. 2019) (quotation

23   omitted).  Declaratory relief claims that are duplicative of a plaintiff's other claims are subject

24   to dismissal. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

25

Here, there is no dispute regarding the existence and validity of the Policy. (*See generally* MTD); (Resp.).  Instead, this dispute concerns what is specifically owed under the Policy, an issue that can be determined through Plaintiff's other causes of action.  Thus, Plaintiff's independent claim for declaratory relief fails because the claim is wholly derivative of Plaintiff's other statutory and contract claims. *See Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693, 702 (N.D. Cal. 2020) ("Where a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper."); *Minden v. Allstate Prop. and Cas. Ins. Co.*, No. 2:21-cv-00151, 2022 WL 206109, at *1 (D. Nev. Jan. 22, 2022) ("Declaratory relief claims that are duplicative of a plaintiff's other claims are subject to dismissal.") (citing *KPMG LLP*, 476 F.3d at 766).  Accordingly, the Court grants Defendant's Motion to Dismiss as to this claim.  Because it is not clear that amendment is futile, Plaintiff is given leave to amend this claim. *See Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102–03 (9th Cir. 2018) ("Leave to amend can and should generally be given, even in the absence of such a request by the party," so long as amendment would not be futile").

**B. Tortious Bad Faith**

Defendant argues that the facts show a genuine dispute over valuation, which defeats a tortious bad faith claim as a matter of law. (MTD 8:14–10:9).   In response, Plaintiff contends that her claim, rather than being about a valuation dispute, concerns the adequacy of Defendant's investigation. (Resp. 14:15–16:22).  According to Plaintiff, Defendant's investigation and subsequent valuation was not in good faith because once he presented evidence of his injuries and the opinion of his medical expert, Defendant dragged outs its evaluation, made settlement offers it knew was unreasonable, and failed to explain the basis for its valuation considering the evidence Plaintiff presented. (*Id.*).

///

///

To state a claim for a tortious breach of the implied covenant, the insured must plausibly allege that: (1) an insurer denied a claim; (2) without any reasonable basis; and (3) with the knowledge or reckless disregard of any reasonable basis to deny coverage. *See Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991). That is, bad faith requires an insurer's denial of benefits to be both objectively and subjectively unreasonable. *See Rivas v. Gov't Employees Ins. Co.*, No. 2:20-cv-306, 2020 WL 3128596, at *2 (D. Nev. June 12, 2020). And an insurer's honest mistake, bad judgment, or negligence is not enough. *Allstate Ins. Co v. Miller*, 212 P.3d 318, 330 (Nev. 2009).

An insurer's knowingly "unreasonable denial or delay in payment of a valid claim" is grounds for a bad faith claim. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). An insurer's failure to adequately inform the insured about a reasonable settlement offer can also be grounds for a bad faith claim. *See Miller*, 212 P.3d at 315. In contrast, "an insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1055 (D. Nev. 2017).

The gravamen of Plaintiff's bad faith claim concerns Defendant's allegedly inadequate investigation.[1] Specifically, Plaintiff contends that Defendant's investigation was inadequate because it relied on its claim handlers to evaluate Plaintiff's claim rather than medical professionals and failed to consider Doctor Nozawa's report. (*See* Resp. 15:5–16:10) (citing portions of the Amended Complaint). Past decisions by this Court have found that an insurer's hiring of an independent medical professional to evaluate a plaintiff's claim evidenced a good

---

[1] Plaintiff additionally argues that Defendant's bad faith is shown by its numerous settlement offers despite "the fact that the policy does not require [Plaintiff] to negotiate, settle, or sign a release in order to receive benefits owed to him within the policy." (Resp. 15:1–5) (citing allegations in the Amended Complaint). The Court disagrees with Plaintiff's contention that settlement offers evince bad faith when they "represent[] the typical back-and-forth in the claims-negotiation process." *Clifford v. Geico Cas. Co.*, 428 F. Supp. 317, 325 (D. Nev. 2019). To be clear, the underlying sum offered may be unreasonable based on the facts of the case, but the mere offer itself is typical of the claims resolution process.

faith investigation.[2] *See Ragonesi v. Geico Cas. Co.*, No. 2:20-cv-1280, at *4 (D. Nev. Dec. 23, 2020) ("In fact, 'the use of an independent medical excerpt to review a case' may even evince good faith.") (citation omitted); *Houston v. GEICO Cas. Co.*, No. 2:20-cv-01505, 2021 WL 682060, at *3 (D. Nev. Feb. 22, 2021) (finding that the plaintiff's claim essentially involved a "mere valuation dispute between competing medical providers" where both parties employed medical professionals to evaluate the claim); *Schmall v. Government Emps. Ins. Co.*, 240 F. Supp. 3d 1093, 1097 (D. Nev. May 6, 2016) ("The use of an independent medical expert to review a case is an indication of good faith."); *Flonnes v. Property & Cas. Ins. Co. of Hartford*, No. 2:12-cv-01065, 2013 WL 3109381, at *4 (D. Nev. June 17, 2013) ("In light of [the insurer's] hiring of a medical expert to review and affirm the findings of its adjusters, the court cannot reasonable infer the subjective element of bad faith.").

In this case, Plaintiff's claim is predicated on the converse: Defendant's bad faith is shown by the fact it allegedly failed to employ medical professionals in evaluating his claim. The Court agrees with Plaintiff that an insurer's decision to forego employing medical professionals in evaluating a claim could evidence bad faith; it disagrees, however, that such a decision *per se* shows bad faith. *See Flonnes*, 2013 WL 3109381, at *4 ("A decision based solely on the opinions of non-medical experts in light of Flonnes' substantial medical records and treatment history might reasonably imply reckless disregard for the lack of a reasonable basis to deny a claim for medical costs."). The weight an insurer's decision, or perhaps more accurately omission, should be given necessarily varies based on the facts and circumstances of each case. *See Goodrich v. Garrison Property and Cas. Ins. Co., Inc.*, 526 F. Supp. 3d 789, 802 (D. Nev. 2021) ("An insurer's failure to properly investigate an insured's claim can support a

---

[2] And an insurer's "reliance on its medical expert over the insured's medical expert does not evince bad faith." *Ragonesi*, 2020 WL at 7643225, at *4 (citations omitted).  Indeed, an "insurer's duty to equally consider the insured's interests alongside its own interests does not require it to give equal consideration to the 'insurer's and the insured's competing medical data." *Id.* (quoting *Flonnes*, 2013 WL 3109381, at *5).

failing to employ proper medical experts, . . . and otherwise failing to properly correspond with her counsel in various circumstances.").  "[W]here as here, the amount of medical specials as compared to the amount of an offer creates a plausible inference that the offer is not reasonable," and the insurer provides no expert, evidence, or explanation with which to justify its offer, an inference of bad faith may arise. *Perez v. State Farm Mutual Automobile Ins. Co.*, No. 2:14-cv-02005, 2017 WL 1181568, at *5 (D. Nev. Mar. 28, 2017).

It is true that the allegations referenced above tangentially refer to a valuation dispute. But the fulcrum of Plaintiff's bad faith claim is that without explanation or adequate investigation into his medical conditions, Defendant repeatedly offered a settlement amount it knew was insufficient considering Plaintiff's medical expenses incurred and conditions. *See Zuchelkowski v. GEICO Ins. Co.*, No. 2:2-cv-02182, 2023 WL 1965526, at *3 (D. Nev. Feb. 13, 2023).  Indeed, an insurer's repeated settlement offer that fails to address or explain evidence set forth by the plaintiff is hardly akin to the "typical back-and-forth in the claims-negotiation process," and is tantamount to having no discussion at all. *Clifford*, 428 F. Supp. 3d at 325.  Here, Plaintiff pleads with enough specificity that Defendant acted unreasonably and with knowledge that there was no reasonable basis for its conduct. *See Guar. Nat. Ins. Co*, 912 P.2d at 272.  Accordingly, Defendant's Motion to Dismiss is DENIED as to Plaintiff's tortious bad faith claim.

### C.  Unfair Claims Practices Act

Plaintiff claims that Defendant violated the Nevada Unfair Claims Practices Act found in NRS § 686A.310(1)(e).  Defendant argues that Plaintiff insufficiently alleges violations of the Unfair Claims Practices Act because Plaintiff merely recites the pertinent statutory language without providing any factual allegations. (MTD 10:10–11:3.)

There are sixteen barred activities that generally protect an insured against the uneven bargaining power against the insurer.  At issue here, according to Plaintiff's Amended

Complaint, are seven of these activities, codified in §§ 686A.310(a), (b), (c), (d), (e), (f), and (n).

First, subsection (1)(a) makes it a violation to "[m]isrepresent[] to insured or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." NRS § 686A.310(1)(a). Plaintiff argues that Defendant misrepresented pertinent facts or policy provisions by making a series of offers to settle, and by relying on claim handlers to evaluate his damages and injuries. (Resp. 17:21–18:9). Again, unless Plaintiff provides a specific provision of the Policy barring settlement offers, the Court is unable to conclude that Defendant's offers constitute a misrepresentation of the policy because settlement offers "represent[] the typical back-and-forth in the claims-negotiation process." *Clifford*, 428 F. Supp. 3d at 325. And as to Defendant's latter contention, in the absence of allegations including the specific provision at issue, the Court cannot conclude that the utilization of claim handlers to the exclusion of medical professionals is a misrepresentation of the Policy.

Next, subsection (1)(b) makes it an unfair practice for an insurer to "fail to acknowledge and act reasonably prompt upon communications with respect to claims arising under insurance policies." NRS § 686A.310(1)(b). Plaintiff's Amended Complaint fails to state a claim under this subsection because "[he] does not set forth any facts plausibly showing that [Defendant] did not promptly respond to communications." *Jimenez*, 448 F.3d at 114. To the contrary, Plaintiff's theory is based on the sufficiency of Defendant's response rather than its timeliness.

As to subsection (1)(f), "[that] a claim that a plaintiff has been made to institute litigation under [this provision] appears to be a fee-shifting provision depending on the success of other underlying claims and is better characterized as a remedy." *Ragonesi*, 2020 WL 7643225, at *5 (quoting *Schmall*, 240 F. Supp. 3d at 1098). Therefore, the Court "dismisses this claim insofar as it is meant to be stated as an independent cause of action but will not rule

that a remedy under this provision is unavailable" if Plaintiff prevails on his surviving claims. *Schmall*, 240 F. Supp. 3d at 1098.

As to the remaining causes of action under NRS § 686A.310, Plaintiff does not merely recite the language of the statute. Rather, "specific conduct . . . is alleged through the [A]mended complaint and re-alleged or incorporated in each respective cause of action." *Salvador*, 2020 WL 5898780, at *5.

In sum, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's declaratory relief claim and claims under NRS § 686A.310(a), (b), and (f), and DENIED as to Plaintiff's claim for tortious bad faith and remaining claims under NRS § 686A.310.[3]

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 8), is **GRANTED in part and DENIED in part**. Plaintiff shall have twenty-one (21) days of the date of this Order to file an amended complaint. Any amended complaint should remedy the deficiencies identified in this Order. Failure to file an amended complaint by this date shall result in the Court dismissing the declaratory relief claim with prejudice.

**DATED** this   27   day of April, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[3] Defendant additionally advances that Plaintiff's request for attorney's fees and punitive damages should be stricken because his claims for tortious bad faith and NRS § 686A.310 fail. (MTD 11:4–12:18). Because the Court found that these claims were adequately pled, the Court declines to strike Plaintiff's request for attorney's fees and punitive damages at this stage in the proceeding.